IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:16-CR-00310 |
| v. | (Judge Brann) |
| EDWIN VAQUIZ, | |
| Defendant. | |

MEMORANDUM OPINION

JUNE 15, 2021

I.   BACKGROUND

In 2016, Edwin Vaquiz was indicted for distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1), and possession with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1).[1] The matter eventually proceeded to trial.

At that trial, testimony established that law enforcement officials had arrested a woman, JF, and JF thereafter became a confidential informant (CI) "in order to help her own case that she had going on at the time."[2] JF informed law enforcement that she had a friend, TL, who knew several drug dealers in the Berwick, Pennsylvania area and who could connect JF to those drug dealers.[3] Through TL, JF

---

[1]   Doc. 1.
[2]   Doc. 141 at 60; *see id.* at 60-62.
[3]   *Id.* at 62-63; Doc. 142 at 109-19.

eventually arranged to conduct a controlled purchase of fentanyl from Vaquiz, which occurred on January 22, 2016.[4]

Shortly thereafter, JF informed law enforcement that Vaquiz was searching for a ride to the Philadelphia, Pennsylvania area to purchase more heroin.[5] As a result, on January 29, 2016, JF picked up TL and Vaquiz and the trio drove to an ATM where Vaquiz withdrew approximately $400.[6] They then proceeded to Philadelphia, where they went into a house to purchase heroin.[7] TL sampled the heroin and, after she confirmed that the heroin was good, Vaquiz handed the seller money, and the seller handed Vaquiz the heroin.[8]

The trio then drove back to Berwick, where JF stopped at a prearranged gas station; JF went into the gas station, and law enforcement officers arrested Vaquiz, TL, and JF.[9] Upon searching Vaquiz, officers discovered a large package that contained approximately 280 bags of heroin.[10] Officers then searched the vehicle that the trio had traveled in and discovered a smaller package in the rear seat where Vaquiz had been seated that contained 28 bags of heroin.[11]

---

[4]   Doc. 141 at 63-65, 69-89. During a controlled purchase, the CI and her vehicle are searched, and the CI is provided pre-recorded currency to use to purchase the narcotics. *Id.* at 65-66. Law enforcement seeks to maintain a constant visual of the CI and, after the controlled substance is purchased, law enforcement again searches the CI and her vehicle. *Id.* at 66.
[5]   *Id.* at 92-94; Doc. 142 at 121-14.
[6]   Doc. 141 at 95-100; Doc. 142 at 125-27, 222-24.
[7]   Doc. 141 at 101-04; Doc. 142 at 127-33, 224-28.
[8]   Doc. 142 at 133-34, 228-30.
[9]   Doc. 141 at 105-07; Doc. 142 at 135-37, 231-33; Doc. 143 at 11-12, 86-87.
[10]  Doc. 141 at 107-09, 116-20.
[11]  *Id.* at 110, 116-20.

After the Government rested its case, Vaquiz was questioned regarding whether he wished to waive his right to testify on his own behalf.[12] Vaquiz confirmed that he had discussed with his attorney the "potential perils" of testifying at trial, and agreed with his attorney's recommendation not to testify.[13] Vaquiz further agreed that he was "voluntarily[,] . . . knowingly[,] and intelligently" waiving his right to testify at trial.[14] Upon the conclusion of trial, Vaquiz was found not guilty of distribution of a controlled substance, but was found guilty of possession with the intent to distribute a controlled substance.[15]

The Court ultimately sentenced Vaquiz to 180 months' imprisonment.[16] Vaquiz filed an appeal with the United States Court of Appeals for the Third Circuit, which affirmed his conviction and sentence.[17]

In 2021, Vaquiz filed this timely 28 U.S.C. § 2255 motion challenging his conviction on grounds of ineffective assistance of counsel.[18] First, Vaquiz asserts that his attorney was ineffective for pressuring Vaquiz to not testify at trial.[19] Second, Vaquiz contends that counsel was ineffective for failing to adequately cross-examine JF regarding the benefits that she may have received for her cooperation, and for

---

[12] Doc. 143 at 98-99.
[13] *Id.*
[14] *Id.* at 99.
[15] Doc. 111.
[16] Doc. 133.
[17] Docs. 137, 145.
[18] Doc. 163.
[19] *Id.* at 5-12.

3

failing to present a witness at trial who could have testified that Vaquiz was not a drug trafficker.[20] The Government has responded to Vaquiz's § 2255 motion and asserts that, regardless of whether counsel's performance was deficient, Vaquiz suffered no prejudice and, accordingly, his motion should be denied without a hearing.[21] Vaquiz has filed a reply brief, rendering this matter ripe for disposition.[22] For the following reasons, the Court will deny Vaquiz's motion.

## II.   DISCUSSION

"In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court established a two-part test to evaluate ineffective assistance of counsel claims."[23] "The first part of the *Strickland* test requires 'showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"[24] In determining whether an attorney's performance is deficient, courts must "determine whether, in light of all the circumstances, the [attorney's] acts or omissions were outside the wide range of professionally competent assistance."[25] As the United States Supreme Court has emphasized:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful,

---

[20]   *Id.* at 13-18.
[21]   Doc. 169.
[22]   Doc. 170.
[23]   *United States v. Bui*, 795 F.3d 363, 366 (3d Cir. 2015).
[24]   *Id.* (quoting *Strickland*, 466 U.S. at 687).
[25]   *Strickland*, 466 U.S. at 690.

to conclude that a particular act or omission of counsel was unreasonable.[26]

"The second part [of the *Strickland* test] specifies that the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"[27] "This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable."[28]

### A. Vaquiz's Decision not to Testify

Vaquiz first argues that his attorney was ineffective for allegedly coercing Vaquiz to not testify at trial.[29] Vaquiz asserts that counsel coerced him into not testifying by promising to resign as Vaquiz's attorney should Vaquiz choose to testify, which left Vaquiz with the two equally objectionable choices: either forego his right to testify and maintain representation, or testify and forego his right to counsel.[30] Vaquiz now contends that, had he testified at trial, he would have testified that he had never before met JF, and that he "was a user of drugs, not a distributor."[31]

---

[26] *Id.*
[27] *Bui*, 795 F.3d at 366 (quoting *Strickland*, 466 U.S. at 694).
[28] *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal quotation marks omitted).
[29] Doc. 163 at 5-12.
[30] *Id.* at 8-12.
[31] *Id.* at 7 n.3.

5

The Court concludes that, regardless of whether counsel actually coerced Vaquiz into waiving his right to testify, Vaquiz suffered no resulting prejudice and, accordingly, his claim of ineffective assistance of counsel fails. Vaquiz asserts that he would have testified to two facts at trial: that he had never before met JF, and that he was a drug user, not a drug distributor.[32] Neither assertion raises a "reasonable probability that . . . the result of the proceeding would have been different"[33] because (1) both assertions are strongly undermined by the facts produced at trial and (2) the evidence of Vaquiz's guilt was overwhelming.

First, Vaquiz's statements are strongly undermined by the evidence. As to his contention that he had never before met JF, JF testified that she had known Vaquiz for nearly a decade.[34] More importantly, however, both JF and TL testified that JF drove Vaquiz to Philadelphia to purchase heroin,[35] and numerous police officers testified that they witnessed JF and Vaquiz together in JF's car prior to their arrest.[36] Thus, the testimony overwhelming establishes that Vaquiz not only knew JF, but traveled for hours with her to purchase heroin. In any event, Vaquiz's proffered testimony does not undermine the case against him; the fact that he purportedly did not know JF does not undermine the evidence, as discussed below, that Vaquiz was in possession of large quantities of heroin that he intended to distribute to others.

---

[32] *Id.*
[33] *Bui*, 795 F.3d at 366 (quoting *Strickland*, 466 U.S. at 694).
[34] Doc. 142 at 97-98.
[35] *Id.* at 125-34, 222-30.
[36] Doc. 141 at 105-07; Doc. 143 at 11-12, 86-87.

With regard to Vaquiz's assertion that he was a drug user, not a drug distributor, both JF and TL testified that, over the course of the several years that they knew Vaquiz, they had never witnessed him using heroin or any other type of drug.[37] TL further testified that Vaquiz had long been her heroin dealer, and she had previously purchased heroin from Vaquiz on an almost daily basis.[38] The jury was also informed that, despite going several hours without using any heroin, Vaquiz showed no symptoms of heroin withdrawal, which undermines any notion that Vaquiz was a heroin user.[39] Perhaps most critically, Vaquiz was arrested with 308 bags of heroin, which were "packaged and ready for redistribution," and which one officer testified was "strictly distribution [quantities]. That is not [for] personal consumption. That is somebody that is trafficking in narcotics for distribution."[40] This again undercuts any notion that Vaquiz was simply a heroin user and not a drug trafficker, rendering any testimony to the contrary highly unlikely to change the outcome of trial.

Finally, the "ample if not overwhelming evidence of" Vaquiz's guilt "supports the conclusion that he suffered no prejudice as a result of counsel's [purportedly] deficient performance."[41] As the Third Circuit discussed on direct appeal:

---

[37] Doc. 142 at 143, 211-12.
[38] *Id.* at 194-96, 210-11. Notably, TL did not wish to testify against Vaquiz and had attempted "to dodge a subpoena" because Vaquiz was "a friend." *Id.* at 192.
[39] Doc. 141 at 113.
[40] Doc. 143 at 73.
[41] *Albrecht v. Horn*, 485 F.3d 103, 129 (3d Cir. 2007).

> Both J.F. and T.L testified that Vaquiz was not a heroin user, that he regularly sold heroin, and that he was the only one in possession of the heroin recovered from the January 29 controlled buy. The record shows that the amount of heroin recovered from Vaquiz (280 bags on his person and 28 bags next to where he was sitting), and the way it was packaged (in small bags for individual resale), are consistent with "strict[] distribution" and "drug dealer quantity," not "personal consumption."
>
> . . . Moreover, even under his own theory, Vaquiz's possession of the heroin and his intent to distribute it to the others would defeat his argument [that he possessed heroin only for personal use].[42]

This evidence demonstrates that Vaquiz purchased distribution quantities of heroin from another individual, took sole possession of that heroin, and intended to later distribute that heroin to others. This established his guilt for possessing with the intent to distribute heroin, and neither of his proffered statements undermines that evidence. Accordingly, the Court concludes that, regardless of whether counsel performed deficiently, Vaquiz has suffered no prejudice, and this claim will be denied.

### B.   Counsel's Performance at Trial

Vaquiz next asserts that his attorney was ineffective for failing to adequately cross-examine JF about the potential benefits that she had received for being a CI, and for failing to call a witness to testify that Vaquiz was not a drug trafficker but

---

[42]   *United States v. Vaquiz*, 810 F. App'x 151, 155-56 (3d Cir. 2020).

was, instead, merely a drug user.[43] The Court again concludes that the evidence does not support Vaquiz's claim that he received ineffective assistance of counsel.

With respect to Vaquiz's claim that counsel failed to adequately cross-examine JF about the benefits that she received for cooperating—specifically a reduction in her sentencing exposure and monetary payments[44]—not only did counsel not perform deficiently, but Vaquiz suffered no prejudice in light of the testimony given at trial that relates to JF's credibility.

First, counsel directly attacked JF's credibility based upon the two issues that Vaquiz references. Counsel—as well as the Government—repeatedly emphasized that JF believed that she potentially faced years of incarceration for the crime that she had committed before agreeing to cooperate with police and that, as a result of her cooperation, JF ultimately faced no criminal charges.[45] Counsel and the Government also questioned JF about monetary payments that she had received for her work as a CI.[46] Additionally, counsel questioned JF about her multiple prior felony convictions,[47] the fact that she had lied previously, including on a federal form to purchase a firearm,[48] and had given prior inconsistent statements.[49] Testimony was also elicited at trial regarding JF's drug use and the possibility that

---

[43] Doc. 163 at 13-18.
[44] *Id.* at 13.
[45] Doc. 142 at 139-40, 145-47, 167.
[46] *Id.* at 181-83; Doc. 141 at 96-98.
[47] Doc. 142 at 158-59. *See also id.* at 8-10, 100-02; Doc. 143 at 19-21.
[48] Doc. 142 at 159-62; *see also id.* at 10-14, 98-103, 142; Doc. 143 at 21-22.
[49] Doc. 142 at 173-76.

JF would lie to maintain her freedom and children,[50] with one Government witness candidly acknowledging that JF "ha[d] a credibility issue."[51] In light of the testimony elicited from counsel and others that directly undermined JF's credibility, the Court cannot conclude that counsel performed deficiently in cross-examining JF,[52] or that Vaquiz was prejudiced in any way by that cross-examination.

Next, although Vaquiz asserts that counsel performed deficiently by failing to call a witness who would have testified that Vaquiz was a drug user and not a drug trafficker,[53] the Court again finds that there is no evidence of either deficient performance or prejudice.

First, there is no evidence that counsel performed deficiently by failing to call a witness who would testify that Vaquiz was a heroin user and not a drug trafficker. As discussed previously, testimony was presented at trial that Vaquiz had sold heroin on many occasions, had never before been seen personally using heroin, did not go through heroin withdrawal despite going for an extended period of time without using heroin, and was arrested with distribution quantities of heroin that was packaged in small bags for resale.[54] In light of the clear evidence that Vaquiz was a

---

[50] *Id.* at 20-21, 101.
[51] *Id.* at 6.
[52] Perhaps the best evidence that counsel effectively undermined JF's credibility and, consequently, that Vaquiz has suffered no prejudice, is the fact that the jury acquitted Vaquiz of the distribution account, which was supported almost entirely by JF and TL's testimony, but convicted Vaquiz of possession with the intent to distribute heroin, which was supported by independent law enforcement testimony.
[53] Notably, Vaquiz has not identified a single individual who could or would have provided such testimony at trial.
[54] Doc. 141 at 113; Doc. 142 at 143, 194-96, 210-12; Doc. 143 at 72-73.

drug trafficker, counsel could reasonably have decided not to suborn perjury by calling a witness to offer false testimony that Vaquiz was not a drug trafficker. Moreover, in light of the strong evidence that Vaquiz was a drug trafficker and not merely a drug user, there is no discernable prejudice from counsel's failure to call a witness to offer testimony to the contrary, as such testimony is not likely to have had any impact on the jury's verdict.[55]

### C. Certificate of Appealability

Because the Court will deny Vaquiz's § 2255 motion, this decision is not appealable unless this Court or a circuit justice issues a certificate of appealability.[56] A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right."[57] To satisfy this standard Vaquiz must demonstrate that reasonable jurists would find that the Court's assessment of the constitutional claim is debatable or wrong.[58] The Court finds that Vaquiz has not met this burden, and therefore declines to issue a certificate of appealability.

---

[55] *See United States v. Travillion*, 759 F.3d 281, 291-93 (3d Cir. 2014) (noting that, based upon the strong evidence of guilt adduced at trial, counsel's actions did not prejudice the defendant).
[56] 28 U.S.C. § 2253(c)(1)(B).
[57] *Id.* § 2253(c)(2).
[58] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

## III.  CONCLUSION

For the foregoing reasons, the Court concludes that Vaquiz's claims are without merit. Accordingly, Vaquiz's 28 U.S.C. § 2255 motion will be denied, and the Court will deny a certificate of appealability.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge
